For the reasons assigned the judgments are affirmed.

35 So.2d 460

**FORREST v. HUNTER.**

**No. 38444.**

April 26, 1948.

K. Hundley and Provosty, Sadler & Scott, all of Alexandria, for appellant.

T. F. Hunter and Walter M. Hunter, both of Alexandria, for appellee.

HAMITER, Justice.

In this petitory action the plaintiff, John M. Forrest, seeks among other things to be decreed the owner of approximately 55

acres of land situated in Rapides Parish and possessed by the defendant, Oscar M. Hunter. The disputed property is out of a larger tract of 205.45 acres owned at one time by Joseph W. Swann. From a judgment dismissing his suit, plaintiff has appealed.

To properly pass upon the issues presented by the appeal, we must take into consideration a former suit, to which the instant action is a sequel, instituted in 1927 by this defendant (and some co-owners who need not be mentioned) against this plaintiff. That suit was also commenced as a petitory action, but thereafter it was tried and dealt with purely as an action to fix the boundary between the contiguous estates of the litigants.

Those estates were within the above mentioned larger tract of 205.45 acres that Joseph W. Swann formerly owned. On February 6, 1911, Swann, for a consideration of $650, sold a part of the tract to Columbus F. Wilkerson, and by a separate deed (of the same date), reciting a consideration of $650, conveyed the remainder to Stephen A. Herring. According to the testimony of those vendees, found in the record of the former suit, the property was purchased in equal proportions, Herring receiving the northern half and Wilkerson the southern half. This testimony is corroborated by two circumstances; each vendee paid the same consideration ($650); and the aggregate acreage recited for each parcel was practically the same, the Herring deed stating that his contained 70 acres more or less, and the Wilkerson deed 67 acres more or less. The stated acreage was incorrect, of course, for the entire tract contained 205.45 acres; but it indicated an equal division of the property.

Thereafter, by mesne conveyances, the entire half that had been acquired by Wilkerson came into the ownership and possession of Oscar M. Hunter.

Herring sold his half in two parts. He conveyed the southern part of his acquisition on December 31, 1912, to John M. Forrest, the deed reciting a consideration of $500 and evidencing a conveyance of: "The south half of a certain piece or parcel of land * * * the description of the entire tract the southern half of which is herein conveyed being as follows: (here follows a description of the land purchased by Herring from Swann)."

On June 11, 1914, Herring sold the northern part of his acquisition to Willie W. Forrest (a brother of John M. Forrest) for a consideration of $500, the deed describing the part sold as: "The north one-half of a certain tract or parcel of land * * * beginning at a point * * * (here the boundary of the Herring tract, said to contain 70 acres more or less, is sought to be delineated). The tract herein conveyed being the remaining portion or north one-half of the above described tract of land, which original tract was purchased by this vendor from J. W. Swann by deed of date February 6, 1911, and the south

half having been sold by this vendor to J. M. Forrest by deed of date December 31, 1912." This last part so sold by Herring to Willie W. Forrest was later acquired, through mesne conveyances, by Ben D. Hawkins and contains (according to the latter's deed) 55 acres more or less. (It is the property in dispute in the instant action.)

When the former suit was commenced in 1927, therefore, the 205.45 acre tract (the original Swann property) was owned in the proportions of one-half by Oscar M. Hunter, one-fourth by John M. Forrest, and one-fourth by Ben D. Hawkins. Hunter's specific part was the entire south half; Forrest's (it was contiguous to Hunter's) was the south half of the north half; and Hawkins' (it adjoined Forrest's on the north) was the north half of the north half. In that suit, to which Hawkins was not a party, the sole issue presented was that of establishing the boundary between the contiguous estates of Hunter (the plaintiff therein) and Forrest (the defendant therein).

On the first trial of that suit, after taking into consideration a survey of the property which had been ordered, the district court concluded that from the description given in Hunter's deed the dividing line could not be located. Then, applying the provisions of Civil Code, Article 850, he held that the 205.45 acres should be equally divided between Hunter and Forrest, and he proceeded to designate the di-

vision line and to direct the establishment of it by surveyors whom he named. In keeping therewith judgment was rendered ordering "that all that portion of said 205.45 acre tract lying south of said division line when established shall constitute the property of plaintiffs as contemplated under their titles running back to the title to Columbus F. Wilkerson from Joseph W. Swann; and that all that portion lying north of said line to be established shall constitute the property of defendant as contemplated under his titles running back to the title to Stephen A. Herring from said Joseph W. Swann, subject to such portion thereof as defendant may have alienated." The judgment further ordered "that said surveyors shall, after they have established said division line as hereinabove directed, prepare a true and correct description of each of said respective tracts' and return same into this court with their proces verbal same to form the basis of a final decree of this court setting forth in correct detailed descriptions of the respective properties."

On an appeal by Forrest from the judgment, we agreed with the district court that the litigation presented only a question of boundary, observing: "The parties are owners of contiguous estates; neither questions the title of the other; their only difference is the boundary line between them." It was our view, however, that perhaps the boundary might be located through a survey based on the description

in Forrest's deed. Accordingly, the case was remanded for the purpose of obtaining such a survey. 183 La. 434, 164 So. 163.

Obeying the instructions of this court, the district judge ordered a survey made in accordance with Forrest's title. But from this new survey he was still unable to locate the disputed boundary, and, as on the first trial, he rendered judgment dividing the 205.45 acre tract equally between Hunter and Forrest pursuant to the rule stated in Civil Code, Article 850.

Again Forrest appealed, and the judgment was affirmed on June 28, 1940. (195 La. 973, 197 So. 649.) The appellant did not apply for a rehearing.

Thereafter, the line designated for providing an equal division of the tract was surveyed, and the surveyors' proces verbal filed in the district court. Forrest opposed the homologation of the proces verbal; but after a regular hearing on the opposition, the court on April 14, 1942, signed a judgment approving the survey. The judgment also decreed Oscar M. Hunter "to be the true and lawful owner, as contemplated under his title running back to the title to Columbus F. Wilkerson from Joseph F. Swann, of the following described portion of the entire tract of 205.45 acres involved herein * * * (here follows a description of the portion)." The judgment further decreed John M. Forrest "to be the true and lawful owner, as contemplated under his title running back to the title to Stephen A. Herring from Joseph W. Swann, of the following described portion of the entire tract of 205.45 acres involved herein * * * (here follows a description of the portion)." Then, for the third time, Forrest appealed to this court.

In affirming that judgment on February 1, 1943, we said:

"* * * He contends that the area of land alloted to him by the survey which the judge has approved includes land belonging to other parties not parties to this suit, and gives to the plaintiffs more land than they are entitled to and in fact more than they sued for. The appellant contends that the surveyors could have surveyed the land and located the dividing line according to the directions given by this court in its first judgment, and therefore that article 850 of the Civil Code is not applicable to this case. All of this is nothing more or less than to say that the judgment which this court rendered on June 28, 1940, and which became final two weeks later, was not a correct judgment. It is sufficient to say that it was and is yet a final judgment, and is not subject to review. The judgment not only established the law of the case but decided definitely the issue which is argued again by the appellant on this appeal. The only method by which that judgment could have been reversed or amended was by an application by the defendant for a rehearing. * * *"

A rehearing was denied on March 18, 1943. (202 La. 648, 12 So.2d 667, 668.)

On November 24, 1943, Oscar M. Hunter purchased from Ben D. Hawkins, for a cash consideration of $800, the northern one-fourth of the original 205.45 acre tract, the deed reciting that it contained 55 acres more or less. This is the identical property which Herring, on June 11, 1914, conveyed to Forrest's brother, and which the latter, by mesne conveyances, transferred to Hawkins.

Admittedly John M. Forrest has never had any title whatever to this 55 acres. Nevertheless, on September 8, 1945, he instituted the instant suit against Hunter praying that he be decreed the owner of it, entitled as such to the possession thereof, and for further judgment condemning Hunter to pay him the sum of $500, being the value of a house that was removed from the land. In the alternative, Forrest prays that there be judgment avoiding and setting aside all of the judgments rendered in the former suit (both by the district court and by this court) and establishing the correct boundary between the original estates owned by him and Hunter. Further, in the alternative, upon the setting aside of those judgments, Forrest prays that Hunter be condemned to pay him the value of timber cut from land shown to belong to him when a proper boundary line is established. The district court dismissed the suit, after a regular trial, and Forrest perfected this appeal.

The alternative demand of appellant, which is to set aside the judgments of the former suit establishing the boundary between the original properties belonging to him and Hunter, calls in question the equities of the litigation. For this reason, even though the issue of boundary has long since been foreclosed as pointed out in our decision of February 1, 1943 (202 La. 648, 12 So.2d 667), we shall give it first consideration. In connection with that demand counsel for Forrest, to quote from their brief, argue: "There can be no doubt that originally there was error in the judgments rendered for there never was 205.45 acres owned by the original plaintiff Hunter and the original defendant Forrest to divide. Yet the court did order that amount of acreage divided equally between them, when 55 acres were included therein which belonged at the time to a man named Hawkins * * *. To enforce the judgment awarding Hunter 102.725 acres, as acquired under the division, and then to give him the 55 acres he subsequently purchased from Hawkins, thereby reducing Forrest's portion to 47 acres would unquestionably be inequitable and unconscionable."

It appears to be the contention of counsel that under Civil Code, Article 850, which was applied in effecting the division, the property of Hawkins should not have been considered; that only the acreage of Forrest should have been pooled with that of Hunter and then the aggregate divided between those two. The mentioned article provides:

"If the titles exhibited do not mention the quantity of land which each person ought to have, or unless it can be established in a legal manner, the limits must be so fixed as to divide the land equally between them."

Perhaps the district court (and this court on appeal) erred in applying that codal provision and in ordering an equal division of the 205.45 acres between Forrest and Hunter, especially since Hawkins owned 55 acres of the tract and he was not a party to that suit. But we are not at all convinced that an injustice has been done to any one by the final judgment which purposed only to establish the boundary between the respective properties of Forrest and Hunter. The title of Hunter was derived from Wilkerson and called for all the property that the latter purchased from Swann, being the south half of the 205.45 acre tract. On the other hand, the titles of Forrest and Hawkins came from Herring who had acquired from Swan the northern half of the 205.45 acre tract. Of that Herring land, as above shown, Forrest's title called for the southern portion (only one-fourth of the whole tract, an important fact which the contention of Forrest overlooks) and Hawkins' the northern portion (the other one-fourth). It does not appear, therefore, that Forrest was in any manner injured by the boundary as established and the division as made. Hunter was entitled to all of the Wilkerson land (south half of the 205.45 acres or

102.725 acres), and he received no more than that. The remaining 102.725 acres (the Herring land) belonged to Forrest and Hawkins, each owning the particular part thereof which his title prescribed.

In effect the situation presented is the same as it would be if Swann had sold directly to Hunter the south 102.725 acres and to Forrest the north 102.725 acres, and thereafter Forrest had conveyed the northern portion of his acquisition to Hawkins. Under those circumstances certainly no one would contend that it would be improper to establish the dividing line between the tracts of Hunter and Forrest on the basis of their respective deeds.

It is noticed, of course, that of the Herring land apparently Hawkins received 55 acres and Forrest only 47 acres. But that difference of acreage is of no importance here; in so far as we know it has never been and is not now a litigated issue. Neither has there arisen any question as to the boundary between the Hawkins and the Forrest lands.

The main demand of Forrest in the instant case, which is that he be decreed the owner of the 55 acre tract purchased by Hunter from Hawkins for $800 on November 24, 1943, has as its basis the judgment signed in the former suit on April 14, 1942, approving and homologating the survey that located the dividing line and decreeing Forrest " * * * to be the true and lawful owner, as contemplated under his title running back to the title to

Stephen A. Herring from Joseph W. Swann, of the following described portion of the entire tract of 205.45 acres involved herein * * *," the description given covering both the Forrest and the Hawkins tracts. And, in connection with the judgment, Forrest pleads that Hunter, by certain actions and conduct in the former suit, is estopped to deny that he (Forrest) is the owner of the Hawkins tract, and that Hunter's purchase of it inured to his benefit.

If it could be said that such judgment on its face recognizes Forrest as the owner of the Hawkins tract, to that extent clearly it is ineffective. In the first place the former proceeding was only a boundary action; it was of the kind in which titles to property are not adjudicated. In the second place Hawkins, the then owner of the property, was not a party to that suit, and certainly under those circumstances his title could not legally be called in question. But the judgment, in our opinion, recognizes Forrest as the owner only of that part of the described tract to which he holds a deed, for his recognition as owner is qualified by the clause" * * * as contemplated under *his title* 'running back to the title to Stephen A. Herring from Joseph W. Swann * * *." (Italics ours.)

With reference to the issue of estoppel and inurement counsel for Forrest take the position that the boundary line would not have been established pursuant

to Civil Code, Article 850 had the courts known that neither Hunter nor Forrest owned the Hawkins tract. And they argue: "Plaintiff in original suit Hunter knew all the time there was included in the lands divided the Hawkins tract but he did not call the same to the attention of either court. Forrest knew the same also and endeavored to point it out to the court unsuccessfully."

From our study of the case we can not conclude that Hunter at any time made misrepresentations to the courts or assumed an improper position with respect to the ownership of the 55 acre tract. Rather, the record convinces us that the courts, as well as both Hunter and Forrest, knew all the time that such tract belonged to Hawkins. All that Hunter did was to insist that the boundary between him and Forrest be fixed according to the Herring and Wilkerson titles, those persons having originally purchased from Swann the 205.45 acre tract in the proportion of one-half to each and Hunter having later acquired Wilkerson's entire one-half. A position of that kind could not possibly serve as a basis for estoppel.

We agree thoroughly with the following remarks of the district judge, found in his written reasons for judgment, viz.:

"Hawkins owned the property and had the right to sell it to whom he pleased. The defendant, Hunter, had never owned that land or represented that he owned it; he at no time took any position that

Hawkins ·did not own it, and did nothing, so far as I can find from this record, to induce the plaintiff, Forrest, to think or believe that he, Forrest, owned it. The doctrine of inurement partakes of the nature of an estoppel, such as where one represented himself to own a title and sells it to another and afterwards acquires the true title. In such a case it would inure to the benefit of the purchaser. The seller would be estopped from questioning his vendee's title. However, in the case at bar I can find no act or representation on the part of Hunter by which he would be estopped to deny any title which Forrest would attempt to assert to the Hawkins tract. For this reason his title would not inure to the benefit of Forrest."

The judgment appealed from is affirmed.